Slip Op. 25-141

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TOYO KOHAN CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> THOMAS STEEL STRIP CORPORATION, <br><br> Defendant-Intervenor. | Before: Jane A. Restani, Judge <br><br> Court No. 24-00261 <br><br> **Public Version** |

## OPINION AND ORDER

Dated: October 23, 2025

[Commerce's final results for the antidumping duty order on diffusion-annealed, nickel-plated flat-rolled steel products from Japan are remanded.]

Daniel Lewis Porter, Gina Marie Colarusso, James Philip Durling, and John Taishu Pitt, Pillsbury Winthrop Shaw Pittman LLP, of Washington, DC, argued for the plaintiff, Toyo Kohan Co., Ltd. With them on the brief was William Charles Sjoberg.

Emma E. Bond, Lead Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for the defendant, the United States. Of counsel on the brief were Charlie Chung and William Mitchell Purdy, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

James R. Cannon, Jr., Cassidy Levy Kent (USA) LLP, of Washington, DC, for the defendant-intervenor, Thomas Steel Strip Corporation. With him on the brief were Nicole Brunda and Ulrika Kristin Skitarelic Swanson.

      Restani, Judge: Before the court is Toyo Kohan Co., Ltd.'s ("Toyo Kohan") motion for judgment on the agency record pursuant to USCIT Rule 56.2 challenging the final results of the United States Department of Commerce's ("Commerce") administrative review of diffusion-annealed, nickel-plated flat-rolled steel products ("DANP") from Japan, covering the period of

May 1, 2022, to April 30, 2023.  Pl.'s Mot. for J. on the Agency R., ECF No. 28 (May 2, 2025) ("Pl.'s Mot."); see Diffusion-Annealed, Nickel-Plated Flat-Rolled Steel Products From Japan: Final Results of Antidumping Duty Administrative Review, 89 Fed. Reg. 95,735 (Dep't Commerce Dec. 3, 2024) ("Final Results").

Toyo Kohan requests that the court hold Commerce's decision to use the shipment date as the date of sale for sales of subject merchandise to the United States market unsupported by substantial evidence.  Toyo Kohan also asks that the court hold Commerce's use of the Cohen's d test unlawful.[1]  Defendant, the United States ("government") and defendant-intervenor, Thomas Steel Strip Corporation ("Thomas Steel"), ask that the court sustain the Final Results.  For the following reasons, the court remands to Commerce the issues of the date of sale and the appropriate differential pricing analysis for reconsideration consistent with this opinion.

## BACKGROUND

On July 12, 2023, Commerce initiated its administrative review of the antidumping ("AD") duty order covering nickel-plated steel products from Japan for period of review ("POR") from May 1, 2022, through April 30, 2023.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 88 Fed. Reg. 44,262, 44,263, 44,266–67 (Dep't Commerce July 12, 2023).  Commerce selected Toyo Kohan as the sole mandatory respondent in this review.  See Respondent Selection Memorandum at 1–2, P.R. 16 (Aug. 18, 2023); Issues and Decision Memorandum for the Final Results of the 2022-2023 Administrative Review of the Antidumping

---

[1] As the court will discuss in more detail, the Cohen's d test is a statistical measure of the extent of the difference between the mean of a test group and the mean of a comparison group.  Decision Memorandum for the Preliminary Results of the 2022-2023 Administrative Review of the Antidumping Duty Order on Diffusion-Annealed, Nickel-Plated Flat-Rolled Steel Products from Japan at 5, P.R. 85 (Dep't Commerce May 16, 2024) ("PDM").  Commerce uses the Cohen's d test as a step in its comparison of the normal value to the export price of the subject merchandise to determine the dumping rate.  Id. at 4–5.

Duty Order on Diffusion-Annealed, Nickel-Plated Flat-Rolled Steel Products from Japan at 1, P.R. 108 (Nov. 25, 2024) ("IDM").  On May 23, 2024, Commerce published the preliminary results and calculated a weighted-average dumping margin of 12.69 percent for Toyo Kohan.  Diffusion-Annealed, Nickel-Plated Flat-Rolled Steel Products From Japan: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review; 2022-2023, 89 Fed. Reg. 45,638, 45,639 (Dep't Commerce May 23, 2024) ("Preliminary Results"); Decision Memorandum for the Preliminary Results of the 2022-2023 Administrative Review of the Antidumping Duty Order on Diffusion-Annealed, Nickel-Plated Flat-Rolled Steel Products from Japan, P.R. 85 (Dep't Commerce May 16, 2024) ("PDM").

Commerce based Toyo Kohan's date of sale "on [the earlier of] the commercial invoice date or shipment date (i.e., SALEDATU)."  Preliminary Results Analysis Memorandum for Toyo Kohan at 2, P.R. 86, C.R. 178, 182 (May 16, 2024) ("Prelim. Analysis Mem.").  In the PDM, Commerce stated that it based the date of sale on the commercial invoice date for Toyo Kohan's U.S. sales because the invoice date was the same or earlier than the shipment date.  PDM at 3–4.  Despite referring to the commercial invoice date in the PDM, Commerce used the shipment date as the date of sale.[2]  See IDM at 3–4.  Commerce also preliminarily selected the method for comparing export price and normal value.  PDM at 4–6.  Commerce applied the Cohen's d test and applied the average-to-transaction ("A-T") method to the U.S. sales that passed the Cohen's d test and the average-to-average ("A-A") method to the U.S. sales that did not pass the Cohen's d test.  Id. at 5–6.  On May 28, 2024, Toyo Kohan submitted a request for correction of ministerial errors, noting that Commerce used the shipment date as the date of sale when it had stated in the

---

[2] In the IDM, Commerce clarified that it used the "SALEDATU" value, which is the earlier of the commercial invoice date or the shipment date, as the date of sale.  See IDM at 4.

PDM that it intended to use the commercial invoice date as the date of sale. Toyo Kohan's Request for Correction of Ministerial Error at 2–3, P.R. 89 (May 28, 2024). Commerce did not make any adjustments based on this request. See Def.-Int.'s Br. in Opp. to Pl.'s Mot. at 6, ECF No. 37 (July 11, 2025) ("Def.-Int.'s Resp."). Toyo Kohan submitted a case brief objecting to Commerce's use of the shipment date as the date of sale but did not object to Commerce's application of the Cohen's d test.[3] See generally Toyo Kohan's Case Br., P.R. 92 (June 21, 2024). In the Final Results, Commerce calculated a final weighted-average dumping margin of 4.44 percent. Final Results at 95,736. Commerce continued to use the earlier of the commercial invoice date or the shipment date as the date of sale. IDM at 4.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and section 516A of the Tariff Act of 1930 (the "Act"), codified as amended, 19 U.S.C. § 1516a(2). The court sustains Commerce's results in an antidumping duty investigation unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i); see also Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996).

---

[3] In its case brief, Toyo Kohan also argued that Commerce utilized the incorrect home market sales database. Toyo Kohan's Case Br. at 2–3, P.R. 92 (June 21, 2024). Commerce corrected this error. See IDM at 5.

## DISCUSSION

### I. Commerce's date of sale determination is unsupported by substantial evidence

Toyo Kohan argues that the invoice date, rather than the shipment date, is the proper date of sale.[4] Pl.'s Mot. at 2. Toyo Kohan contends that the record demonstrates that more than half of its U.S. sales changed price after shipment, meaning the material terms of sale are not set until the invoice date for most of its U.S. sales. Id. at 2–3, 5, 11. Specifically, Toyo Kohan notes that its Section A and C Responses make clear that 83 out of the 135 U.S. transactions had price changes after the shipment date. Id. at 27–28. Toyo Kohan argues that Commerce relied on a single sample sale rather than the whole record to support its date of sale determination, yet even that sample sale does not support Commerce's choice of the shipment date as the date of sale.[5] Id. at 31. Toyo Kohan notes that in the prior administrative review, Commerce recognized that its preliminary use of the shipment date as the date of sale had been in error and instead used the invoice date in the Final Results. Id. at 2, 24. Toyo Kohan argues that here, too, Commerce's use of the shipment date was a ministerial error. See id. at 24.

The government responds that the record evidence supports Commerce's use of the shipment date as the date of sale. See Def.'s Resp. to Mot. for J. on the Agency R. at 11, ECF No. 40 (July 11, 2025) ("Def.'s Resp."). The government points to the sample sale provided by Toyo

---

[4] On August 11, 2025, the court issued questions to the parties inquiring, assuming arguendo that the court remands to Commerce on the Cohen's d issue, whether it should address the date of sale issue now. Letter Issued by The Hon. Jane A. Restani, ECF No. 47 (Aug. 11, 2025). The parties agreed that the court should address the date of sale issue now. See Def.'s Resp. to Ct.'s Req./Order for Resp. to Suppl. Questions at 2, ECF No. 48 (Aug. 18, 2025); Pl.'s Resp. to Ct.'s Req./Order for Resp. to Suppl. Questions at 2, ECF No. 50 (Aug. 18, 2025); Def.-Int.'s Resp. to Ct.'s Req./Order for Resp. to Suppl. Questions at 3, ECF No. 51 (Aug. 18, 2025).

[5] Toyo Kohan adds that this transaction actually shows a price change between shipment and invoice, demonstrating that the material terms were not established at the shipment date. Pl.'s Mot. at 31. The government, however, disagrees. Def.'s Resp. at 15, 22.

Court No. 24-00261 Page 6
**Public Version**

Kohan in Exhibit A-10A, which it argues shows the same price at shipment and the invoice date. Id. at 15, 22–23; see also Def.-Int.'s Resp. at 5. The government adds that the other sample sale provided by Toyo Kohan also lists the same price at shipment and final invoice. Def.'s Resp. at 23. The government contends that Toyo Kohan's argument that most of the U.S. transactions had price changes after the shipment date conflicts with the documentation of the sample sale. Id. Thomas Steel argues that these alleged changes in price are merely internal accounting entries used by Toyo Kohan and not reflective of real changes to the price between the shipment date and the invoice date.⁶ Def.-Int.'s Resp. at 9–10. The government acknowledges that Commerce used the invoice date in prior administrative reviews but notes that each administrative review is a separate exercise of Commerce's authority.⁷ Def.'s Resp. at 17–18.

---

⁶ Thomas Steel also notes that this court has previously upheld Commerce's practice of using the earlier of the shipment date or invoice date as the date of sale because when a party ships its product to a customer, it reasonably follows that the material terms of the sale have been established. Def.-Int.'s Resp. at 8 (citing Tension Steel Indus. Co. v. United States, 179 F. Supp. 3d 1185, 1194 (CIT 2016)). In Tension Steel, the court sustained Commerce's use of the shipment date of the sale. See 179 F. Supp. 3d at 1194. There was no indication in that case, however, that the terms of the sale could have changed after the shipment. Accordingly, the case addressed a different set of facts than those currently before the court.

⁷ The government also argues that Toyo Kohan failed to exhaust its challenges to Commerce's date of sale determination. Def.'s Resp. at 19. In particular, the government notes that Toyo Kohan failed to argue before Commerce that the "VAL_ADJU" field showed post-shipment alterations in price. Id. at 19, 21. Toyo Kohan responds that, while it did not present this exact argument before Commerce, it provided Commerce with sufficient notice of its challenge to the shipment date as the date of sale. Toyo Kohan Reply at 16–21, ECF No. 44 (Aug. 8, 2025) ("Pl.'s Reply"). Toyo Kohan adds that it would have been impossible for Toyo Kohan to challenge the date of sale rationale that Commerce ultimately adopted because that rationale was first articulated in the Petitioner's Rebuttal Brief. Id. at 21. The court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The Federal Circuit has held that a party is on notice that Commerce may consider certain arguments regarding record evidence if those arguments are presented in another party's case brief, even if Commerce did not rely on those arguments in its preliminary determination. See Boomerang Tube LLC v. United States, 856 F.3d 908, 913 (Fed. Cir. 2019). The Federal Circuit concluded that, to exhaust its administrative remedies, a party must respond to arguments presented before Commerce because of the possibility that Commerce may adopt those arguments in the final results. Id. In the PDM,

In an antidumping review, Commerce conducts a "fair comparison" of the prices of a good sold in the respondent's home market (the "normal value") with the prices for the same or similar good sold in the U.S. market (the "export price") to determine the dumping margin. 19 U.S.C. §§ 1677b(a), 1677a, 1675(a)(2). The normal value must be "the price . . . at a time reasonably corresponding to the time of the sale used to determine the export price." Id. § 1677b(a)(1)(A). Accordingly, Commerce determines the "date of sale," which is the date "when the material terms of sale are established." Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. No. 103-316, at 810 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4153.[8] The material terms generally include price, quantity, payment, and delivery terms. Eregli Demir ve Celik Fabrikalari T.A.S v. United States, 308 F. Supp. 3d 1297, 1306–07 (CIT 2018) (citing Sahaviriya

---

Commerce stated that "where shipment date precedes invoice date, shipment date better reflects the date on which the material terms of sale are established." PDM at 3. Commerce proceeded to use Toyo Kohan's shipment date as the date of sale. Id. at 3–4; Prelim. Analysis Mem. at 2; IDM at 4. On June 21, 2024, Toyo Kohan submitted a case brief characterizing Commerce's use of the shipment date as the date of sale as a ministerial error that should be corrected, just as Commerce corrected the same error in the eighth administrative review. Toyo Kohan's Case Br. at 2, P.R. 92 (June 21, 2024). On June 27, 2024, Thomas Steel Strip Corporation responded, arguing that the shipment date was the date of sale because the material terms of the sale were established on the shipment date. Petitioner's Rebuttal Br. at 2, P.R. 95, C.R. 191 (June 27, 2024). On July 8, 2024, Toyo Kohan submitted a surrebuttal brief arguing that the material terms of sale were not set on the shipment date, but Commerce rejected this brief. See generally (Rejected) Toyo Kohan's Surrebuttal to Rebuttal Br., P.R. 98, C.R. 192 (July 8, 2024) ("Toyo Kohan's Surrebuttal Br."). In the PDM, Commerce did not state that the terms of the particular sale at issue were established at the time of shipment. Rather, Toyo Kohan first heard this argument in Thomas Steel Strip Corporation's rebuttal brief. By rejecting Toyo Kohan's surrebuttal brief, Commerce effectively blocked Toyo Kohan's attempt to exhaust its administrative remedies. While Toyo Kohan's surrebuttal brief did not specifically outline its "VAL_ADJU" argument, it referred to the Supplemental Section C response, which contained the "VAL_ADJU" data. See Toyo Kohan's Surrebuttal Br. at 2. Accordingly, the brief would have provided Commerce with sufficient notice of Toyo Kohan's arguments regarding the date of sale. The court accordingly rejects the government's argument that Toyo Kohan failed to exhaust its administrative remedies on this issue.

[8] Congress designated the Statement of Administrative Action as "an authoritative expression by the United States concerning the interpretation of the Uruguay Round Agreements and this Act." 19 U.S.C. § 3512(d).

Steel Indus. Pub. Co. v. United States, 34 CIT 709, 727, 714 F. Supp. 2d 1263, 1280 (2010), aff'd, 649 F.3d 1371 (Fed. Cir. 2011)). The date of sale normally will be the date of invoice but may be another date if that date "better reflects the date on which the exporter or producer establishes the material terms of sale." 19 C.F.R. § 351.401(i). Commerce has a "well-established and longstanding practice of looking beyond the invoice date to the parties' actual course of conduct, as well as the parties' expectations concerning the transaction, to determine whether an earlier date . . . represents the point at which the parties reached a meeting of the minds on the material terms of sale." Nucor Corp. v. United States, 33 CIT 207, 259–60, 612 F. Supp. 2d 1264, 1308 (2009) (citation omitted) (citation modified). Commerce's practice is to use the shipment date when the shipment date precedes the invoice date because the shipment date better reflects the date on which the material terms of sale are established. PDM at 3; IDM at 4.

Toyo Kohan explained its sales process in detail in its Section A and Section C Questionnaire Responses to Commerce. See Toyo Kohan's Section A Questionnaire Response at 23–25, P.R. 22–23, C.R. 3, 5–9 (Sep. 15, 2023) ("Sec. A Resp."); Toyo Kohan's Section C Questionnaire Response at 24–25, P.R. 39–40, C.R. 48–49 (Oct. 10, 2023) ("Sec. C Resp."). Toyo Kohan negotiates sales terms for its shipments with its customer. Sec. A Resp. at 16. During the period of review, [[          ]] Toyo Kohan's U.S. sales were made to an unaffiliated customer, [[     ]]. Id. at 15. Toyo Kohan offers its customer a price based on an apparently agreed-upon pricing formula that calculates the final price based on [[

          ]]. Id. at 15–16. The customer then sends a purchase order to Toyo Kohan, and Toyo Kohan generates an electronic order confirmation containing the estimated price, quantity, product specifications, shipment terms, and a sales contract. Id. at 16–17. Toyo Kohan produces the merchandise and ships it to the United States. Id. at 17. Toyo

Kohan's system issues a summary bill to the customer based on the shipment date and the tentative price in the system at the time. Id.; Sec. C Resp. at 16. Toyo Kohan then generates a payment invoice with a final sales price, which is [[

]]. Sec. A Resp. at 17.

[[

]] Id.; Sec. C Resp. at 24–25. This change is "an internal difference between the most recent order confirmation and the actual sales price." Sec. C Resp. at 25. The U.S. sales database submitted by Toyo Kohan contains a field marked "VAL_ADJU," which indicates the difference between the price on the date of shipment and the final invoice. Sec. C Resp. at 25; see Toyo Kohan's Supplemental Section C Questionnaire Response, Ex. SC-1, P.R. 73–74, C.R. 132–33, 138 (Apr. 24, 2024).

As evidence of its sales process, Toyo Kohan attached two example sales to its Section A Response. See Sec. A Resp., Exs. A-10A, A-10B. Exhibit A-10A includes contract number [[ ]], dated [[ ]], with a quantity of [[ ]] metric tons, a unit price of [[ ]] per metric ton, and a total contract price of [[ ]] U.S. dollars. Sec. A Resp., Ex. A-10A at 55. The order confirmation, dated [[ ]], however, lists a different unit price of [[ ]] per metric ton, a different quantity of [[ ]] metric tons, and a different total contract price of [[ ]]. Id. at 57. The order shipped on [[ ]]. Id. at 62. A billing statement dated [[ ]] lists a unit price of [[ ]] per metric ton, the same price listed on the order confirmation, and a quantity of [[ ]] kilograms, the same quantity listed on the [[ ]] contract. Id. at 59. The bill of lading, dated [[ ]], lists the same quantity of [[ ]] kilograms but no unit or contract price. Id. at 64. A revised billing statement dated [[ ]] lists the original unit price of [[ ]] per metric

ton and the original quantity of [[ ]]. Id. at 60. Another contract with the same contract number, dated [[ ]], also lists the original unit price of [[ ]] per metric ton, but lists a quantity of just [[ ]] metric tons, the same quantity listed on the order confirmation. Id. at 58. Accordingly, the total contract price on this version of the contract is [[ ]]. Id. The invoice for the contract, dated [[ ]], contains the same terms as the [[ ]], contract, listing a net weight of [[ ]] metric tons, a unit price of [[ ]] per metric ton, and a total price of [[ ]]. Id. at 62–63.

       Exhibit A-10B includes contract number [[ ]], dated [[ ]], with a quantity of [[ ]] metric tons and lists a unit price of [[ ]] per metric ton. Sec. A. Resp., Ex. A-10B at 24. An order confirmation, dated [[ ]], lists the same quantity of [[ ]] metric tons, a unit price of [[ ]], and a total price of [[ ]]. Id. at 26. An updated contract, dated [[ ]], lists the same quantity of [[ ]] metric tons, the same unit price of [[ ]] per metric ton, and the same total contract price of [[ ]]. Id. at 1. The goods shipped on [[ ]]. Id. at 4. The bill of lading, dated [[ ]], lists a different final quantity of [[ ]] kilograms. Id. at 7. The invoice, dated [[ ]], lists a quantity of [[ ]] metric tons, the same quantity listed on the bill of lading, the same price of [[ ]] per metric ton listed on the [[ ]] contract, and a new total contract price of [[ ]]. Id. at 4–5.

       Commerce's use of the shipment date as the date of sale was unsupported by the record and a reasoned explanation. Careful reading of the record evidence shows that Toyo Kohan's billing documentation at the time of shipping is virtually meaningless, as it does not necessarily reflect the quantity or price in the purchase order or the final invoice. Toyo Kohan clearly laid out its sales process in its Section A response, in which it explained that because of the agreed-upon

pricing formula with its customer during the period of review, the final price of the goods is not reflected in the shipment documents. Rather, [[                                                         ]] could impact the price. Nothing in the record contradicts Toyo Kohan's explanation of its sales process. Toyo Kohan's documentation of the "VAL_ADJU" field and accompanying explanation of the meaning of the field in its Section C response suggest that the documented sales price may change after the time of shipment. The sample sales that Toyo Kohan submitted to Commerce with its Section A response also support this conclusion. Exhibit A-10A, for example, shows that at the time of shipment, the unit price was stated as [[    ]] per metric ton in both the [[    ]] order confirmation and the [[  ]] billing statement. Sec. A. Resp., Ex. A-10A at 57, 59. Accordingly, the price stated at shipment did not reflect the final price of [[    ]] per metric ton. Id. at 60. While these terms happen to match those listed on the original [[        ]] contract, id. at 55, this suggests that there were no changes to the inputs of the pricing formula, not that the material terms of the sale were only set at the shipment date. Exhibit A-10B does not contradict Exhibit A-10A. While the per unit price did not change between the pre-shipment contract and the final invoice, no documentation at the time of shipment also demonstrates this per unit price. See generally Sec. A. Resp., Ex. A-10B. While the price reflected in the record at the shipment date may have no substance, the sales actually may or may not be considered to have been made on the date. The price in dollar terms is not reflected until the invoice but the pricing formula set the price perhaps earlier than the invoice date. The court remands for Commerce to reconsider both the date of sale and the sales price, recognizing that when there is an agreed-to pricing formula, there may be a disconnect in the record data for the two matters. The court makes no determination as to the date of sale or sales price among the various possibilities nor does it direct or prohibit reopening of the record.

## II. The court remands to Commerce to reperform its differential pricing analysis

Toyo Kohan argues that, in the light of the Federal Circuit's recent decisions, the court should remand to Commerce to evaluate whether Commerce appropriately used the Cohen's d test for Toyo Kohan's sales. Pl.'s Mot. at 35 (citing Marmen Inc. v. United States, 134 F.4th 1334 (Fed. Cir. 2025) ("Marmen"); Stupp Corp. v. United States, No. 23-1663, 2025 WL 1178392 (Fed. Cir. Apr. 23, 2025) ("Stupp II")). Toyo Kohan acknowledges that it did not raise this issue before Commerce but argues that the exhaustion doctrine does not apply because the Federal Circuit's recent decisions in Marmen and Stupp II represent a shift in controlling law that forecloses Commerce's use of the Cohen's d methodology in this case. Id. at 36–38. Toyo Kohan contends that the data that Commerce considered does not meet the underlying assumptions on which the Cohen's d test rests, as required by the Federal Circuit in Marmen. Id. at 38. Specifically, Toyo Kohan notes that the data is not normally distributed, the data does not have equal variances, and the data is not sufficiently numerous. Id. at 40–41.

The government and Thomas Steel respond that Toyo Kohan failed to exhaust its administrative remedies by failing to challenge Commerce's application of the Cohen's d test during the administrative review and that, accordingly, the court should dismiss Toyo Kohan's challenge. Def.'s Resp. at 9–10, 33; see Def.-Int.'s Resp. at 17–19. The government argues that it would not have been futile for Toyo Kohan to raise its arguments before Commerce because doing so was necessary to develop the factual record and allow for judicial review pursuant to 19 U.S.C. § 1516a(b)(1)(B)(i). Def.'s Resp. at 29. The government adds that Toyo Kohan's arguments regarding Commerce's application of the Cohen's d test are not appropriate for

resolution by the court in the first instance as they are not pure questions of law.[9] Def.'s Resp. at 30–32.

As discussed above, in an antidumping review, Commerce conducts a "fair comparison" of the normal value and the export price to determine the dumping margin for each entry. 19 U.S.C. § 1677b(a). Commerce selects a method of comparison to compare the export price to the normal value. 19 C.F.R. § 351.414. Commerce may use an average-to-average (comparing the weighted-average normal values to weighted-average export prices), transaction-to-transaction, or average-to-transaction method (comparing the weighted-average normal values with the export prices of individual sales). Id. § 351.414(b); PDM at 4. Commerce may use the average-to-transaction method only if there is a pattern of export prices for comparable merchandise that differ significantly among purchasers, regions, or period of time, and Commerce explains why such differences cannot be taken into account using an average-to-average or transaction-to-transaction method. 19 U.S.C. § 1677f-1(d)(1)(B). Commerce conducts a differential pricing analysis to determine whether to use the average-to-transaction method. Mid Continent Steel & Wire, Inc. v. United States, 31 F.4th 1367, 1371 (Fed. Cir. 2022). Commerce uses the Cohen's d test as the first step in the differential pricing analysis to calculate the dumping margin. Marmen, 134 F.4th at 1345. The Cohen's d test "measure[s] whether the United States prices to a particular purchaser, region, or time period differ significantly from the prices for all other purchasers, regions, and time periods." Id. at 1344 (citation omitted). In Marmen, the Federal Circuit held that the underlying

---

[9] Thomas Steel adds that the Federal Circuit's decision in Stupp Corp. v. United States, 5 F.4th 1341 (Fed. Cir. 2021) ("Stupp I") raised "'significant concerns relating to Commerce's application of the Cohen's d test . . . in adjudications in which the data groups being compared are small, are not normally distributed, and have disparate variances.'" Def.-Int.'s Resp. at 19 (quoting Stupp I, 5 F.4th at 1357).

data must be "normally distributed, equally variable, and equally and sufficiently numerous" for Commerce to use the Cohen's d test. Id. at 1348.

The court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The Federal Circuit has held that "a party's failure to raise an argument before Commerce constitutes a failure to exhaust its administrative remedies." Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1388 (Fed. Cir. 2014) (citations omitted). The court may excuse a party's failure to argue a "pure question of law" to the agency that "can be addressed without further factual development or further agency exercise of discretion." Itochu Bldg. Prods. v. U.S., 733 F.3d 1140 (Fed. Cir. 2013); see also Agro Dutch Indus. Ltd. v. United States, 508 F.3d 1024, 1029 (Fed. Cir. 2007). Additionally, a party need not exhaust its administrative remedies where invoking such remedies would be futile. Asociacion Colombiana de Exportadores de Flores v. U.S., 916 F.2d 1571, 1575 (Fed. Cir. 1990) (citation omitted). The futility exception is narrow. "The mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." Corus Staal VV v. U.S., 502 F.3d 1370, 1379 (Fed. Cir. 2007) (citation omitted).

Commerce applied the Cohen's d test to Toyo Kohan's sales in its calculation of the weighted-average dumping margin for Toyo Kohan. PDM at 6. Toyo Kohan did not challenge Commerce's application of the Cohen's d test in its case brief. See Toyo Kohan's Case Br. On April 30, 2025, Toyo Kohan moved to amend its complaint to include an argument that Commerce unreasonably applied the Cohen's d test to groups of sales data that did not meet the prerequisites for the test set out by the Federal Circuit in Marmen. See Toyo Kohan Mot. to Amend Compl., ECF No. 27 (Apr. 30, 2025). The court granted Toyo Kohan's motion. Toyo Kohan Co., Ltd. v. United States, Slip Op. 25-77, 2025 WL 1693517 (CIT June 17, 2025).

As the court noted in its order granting Toyo Kohan's motion to amend the complaint, while it is uncontested that Toyo Kohan failed to raise its challenge to Commerce's application of the Cohen's d test in the underlying proceedings, any such efforts would have been futile. <u>Id.</u> at 3. The Federal Circuit had not yet resolved the issue of how Cohen's d could be applied properly, while Commerce adhered to the methodology faithfully without ever considering the three factors that the government here considers factual, after several opportunities to reconsider the matter. The Federal Circuit's opinion in <u>Marmen</u> clarified the longstanding dispute about the proper application of the Cohen's d test. <u>See</u> <u>Marmen</u>, 134 F.4th at 1343–48. Accordingly, the court remands to Commerce to perform its differential pricing analysis consistent with the Federal Circuit's opinion in <u>Marmen</u>.

## CONCLUSION

For the foregoing reasons, the court remands to Commerce to reevaluate its date of sale determination and to reperform its differential pricing analysis consistent with this opinion. The remand shall be issued within 60 days of the conclusion of the ongoing government shutdown. Comments may be filed 30 days thereafter and any responses 15 days thereafter.

  <u>/s/ Jane A. Restani</u><br>
  Jane A. Restani, Judge

Dated: October 23, 2025
       New York, New York